IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SHANNON D. YOUNG )
 )
 v. ) NO. 3:12-0009
 )
REUBEN HODGE, et al. )

TO: Honorable Kevin H. Sharp, District Judge

# R E P O R T  A N D  R E C O M E N D A T I O N

By Order entered January 11, 2012 (Docket Entry No. 7), this action was referred to the Magistrate Judge to enter a scheduling order for management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Presently pending before the Court is the Motion to Dismiss (Docket Entry No. 37) filed by Defendant Desiree Andrews, to which the plaintiff has responded in opposition. See Docket Entry No. 41. Also before the Court is the Motion to Dismiss (Docket Entry No. 61) of Defendants Jason Woodall, Thomas Vance, Billy Smith, Reuben Hodge, and Ricky Bell, to which the plaintiff has responded in opposition. See Docket Entry No. 64. Set out below is the Court's recommendation for disposition of the motions.

## I. BACKGROUND

The plaintiff is an inmate of the Tennessee Department of Correction ("TDOC") currently confined at the West Tennessee State Prison ("WTSP"). He filed this action pro se and in forma pauperis on December 8, 2010, in the Western District of Tennessee. By Order entered January 4, 2012 (Docket Entry No. 5), the action was transferred to this District because venue was improper in the Western District.

The plaintiff seeks damages and declaratory relief for civil rights claims brought under 42 U.S.C. § 1983 and for state law claims brought pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367. His action is based upon events occurring during his confinement at the Riverbend Maximum Security Institution ("RMSI") in 2009 and 2010. Named as defendants to the complaint are TDOC Assistant Commissioner Reuben Hodge, TDOC Internal Affairs officer Jason Woodall, former RMSI Warden Ricky J. Bell, RMSI Deputy Warden Mike Crutcher, RMSI "Captain" Davis, RMSI Administrative Lieutenant Thomas Vance,[1] RMSI Health Administrator Desiree Andrews, RMSI Classification Coordinator Bill Smith, nurse Kim l/n/u ("Nurse Kim"), nurse practitioner Steve Cernawsky, and Correctional Medical Services, the medical service provider at RMSI.

The plaintiff's first claim is that, shortly after his transfer to the RMSI in November 2009, three cell phone numbers were removed from his list of approved telephone numbers ("call list") because cell phone numbers were not permitted to be part of an inmate's call list under the TDOC policy in existence at the time. The plaintiff contends that the cell phone numbers had been approved

---

[1] Although the plaintiff identifies this defendant as Steve Vance in the Complaint, the defendant refers to himself as Thomas Vance in his motion to dismiss.

prior to the policy banning cell phone numbers and that the TDOC policy did not require removal of numbers that had been previously approved. The plaintiff unsuccessfully grieved the matter through the prison's administrative grievance process. He alleges that Defendant Bell violated TDOC policy in responding to the grievance and that Defendant Hodge failed to take corrective action upon the plaintiff's letter complaining about the matter and the grievance ruling. The plaintiff contends that he has a vested liberty interest in telephone access and that his due process rights were violated by the disallowance of the three phone numbers. See Complaint (Docket Entry No. 1), at 6-8.

The plaintiff's next claims arise from the forcible removal of an earring from his ear by prison officials on February 8, 2010. The plaintiff asserts that he had an earring in his left ear which had been permanently affixed for approximately 25 years and which he had been wearing during his TDOC incarceration without issue.[2] However, TDOC policy does not allow male inmates to wear earrings, and the plaintiff alleges that, on February 8, 2010, Defendant Davis escorted the plaintiff to Defendant Vance's office where Vance stated that the earring was going to be removed even if it was permanently affixed. The plaintiff alleges that Nurse Kim was summoned to Vance's office but was unable to remove the earring despite using two different kinds of tools or instruments and that Vance ultimately ordered that the plaintiff be taken to the prison infirmary where the earring was eventually removed by nurse practitioner Steve Cernawsky. Id. at 8 and 11-16.

The plaintiff alleges that he suffered searing pain during both the unsuccessful attempt and the successful removal of the earring, that his ear was not properly sanitized or numbed by Nurse Kim or Cernawsky, that prison physicians were not consulted prior to the removal of the earring, that the

---

[2] It is unclear from the complaint exactly how long the plaintiff had been incarcerated within the TDOC prior to February 2010, and thus how long he had worn the earring while he was a TDOC inmate.

defendants ignored his protests that he did not consent to removal of the earring, which he terms a "medical procedure," and that information from his medical files was improperly shared with Defendant Davis by medical staff at the prison. He contends that his constitutional rights were violated by defendants Davis, Vance, Nurse Kim, and Cernawsky and that he also suffered an assault and battery under state law at the hands of Nurse Kim and Cernawsky. Id. at 9-20 and 26-27. He contends that Defendants Correctional Medical Services and Desiree Andrews breached their duty to supervise their subordinates and thus allowed the assault on the plaintiff to occur. Id. at 26-27.

Defendant Vance issued the plaintiff disciplinary write-ups for "personal property violation" and "attempt to intimidate an employee" as a result of the events surrounding his earring removal. The plaintiff alleges that he was found guilty of the charges and punished with five days of punitive segregation, deferred for a 60 day probationary period, even though no actual hearing took place, he was told by the disciplinary board chairperson "not to worry about it," and his hearing forms were marked "not guilty." The plaintiff asserts that he unsuccessfully appealed the disciplinary convictions to Defendant Bell. The plaintiff claims that his Due Process rights were violated by the disciplinary proceedings. Id. at 21-22.

The plaintiff alleges that, after his earring was removed, his grievances, complaints, and letters about what happened to him were routinely rejected and that Defendants Woodall, Bell, Crutcher, and Hodge all failed to properly investigate the matter and remedy the situation. The plaintiff also alleges that Defendant Woodall lied to the plaintiff's step-father about the situation during a conversation between the two men. Id. at 22-25 and 28.

Finally, the plaintiff alleges that, on February 19, 2010, he was reclassified and transferred from the RMSI to the West Tennessee State Penitentiary for the purported reason of "staff conflict."

4

He contends that this transfer infringed upon a constitutionally protected liberty interest and that Defendant Smith, the RMSI classification coordinator, knew that the reclassification and transfer was arbitrary and capricious.

Process for Defendants Davis, Cernawsky, Crutcher, "Nurse Kim" and Correctional Medical Services was returned unexecuted. See Docket Entry Nos. 20, 23-24, and 31-34.[3]

Defendant Desiree Andrews has answered the Complaint, see Docket Entry No. 36, and filed a motion to dismiss (Docket Entry No. 37) asserting that the plaintiff fails to state a claim against her upon which relief can be granted. She argues that the plaintiff has not alleged facts in his Complaint which support an official capacity claim against her. Additionally, Defendant Andrews asserts that there are no factual allegations in the Complaint showing that she was personally involved in any of the alleged wrongdoings and that the only allegations against her in her individual capacity are allegations that, as the RMSI Health Services Administrator, she failed to properly supervise other medical personnel at the RMSI, allegations which she argues are conclusory and insufficient to support claims against her under Section 1983.

The plaintiff responds by arguing that, even if Defendant Andrews was not directly involved in the removal of his earring, she was present at the RMSI on the date his earring was removed and must have acquired after-the-fact knowledge of the events at issue. The plaintiff argues that Defendant Andrews had a duty to inquire into the incident after learning about it and that her credibility is at issue. See Docket Entry No. 41.

---

[3] By a contemporaneously entered Order, the Court has granted in part and denied in part the plaintiff's motion (Docket Entry No. 63) to compel service of process upon these four defendants.

In lieu of an answer, Defendants Woodall, Vance, Smith, Hodge, and Bell filed a motion to dismiss in which they argue that the plaintiff fails to state claims against them upon which relief can be granted. See Docket Entry No. 61. The Defendants contend that the plaintiff's allegations regarding the removal of cell phone numbers from his call list, his allegation that Defendant Bell violated prison grievance policies, and his allegation that Defendant Woodall lied to the plaintiff's stepfather do not implicate constitutional concerns and should be dismissed as a matter of law. They further contend that the plaintiff does not have viable constitutional due process claims arising out of the prison disciplinary proceedings and the reclassification/transfer decision because he has not alleged facts showing the infringement of a constitutionally protected interest. The Defendants also argue that the plaintiff's factual allegation against them are largely conclusory and that he has not alleged sufficient facts showing their personal involvement in the alleged wrongdoings to support individual liability claims against them. See Memorandum of Law (Docket Entry No. 62).

The plaintiff responds by arguing that his telephone numbers claim is not that he should have been granted unlimited telephone usage, but that the removal of the cell phone numbers was not penologically justified and also violated his right to privacy. With respect to the removal of his earring, he contends that his complaint alleges facts showing the direct personal involvement of Defendant Vance. The plaintiff contends that his allegations that Defendants Woodall and Hodge failed to investigate the matter of the forced removal of the plaintiff's earring upon gaining knowledge of the incident are sufficient to support constitutional claims against them. See Docket Entry No. 64.

## II. STANDARD OF REVIEW

Motions to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure are reviewed under the standard that the Court must accept as true all of the allegations contained in the complaint, resolve all doubts in the plaintiff's favor, and construe the complaint liberally in favor of the pro se plaintiff. See Kottmyer v. Maas, 436 F.3d 684 (6th Cir. 2006); Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999); Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). However, although the complaint need not contain detailed factual allegations, the plaintiff must provide the grounds for his entitlement to relief and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The factual allegations supplied must be enough to show a plausible right to relief. Twombly, 550 U.S. at 555-61. More than bare assertions of legal conclusions are required to withstand a motion to dismiss and the complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Id.; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436-37 (6th Cir. 1988). The Court need not accept as true legal conclusions or unwarranted factual inferences. See Gregory v. Shelby Cnty., 220 F.3d 433, 446 (6th Cir. 2000); abrogated in part on other grounds, Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res., 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Although Rule 8 of the Federal Rules of Civil Procedure does not constitute a "hyper-technical, code-pleading regime," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions." Iqbal, 556 U.S. at 678-79. A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. at 678 (quoting Twombly, 550 U.S. at 557).

## II. CONCLUSIONS

A. Desiree Andrews

The motion to dismiss of Defendant Andrews should be granted. The Complaint contains no factual allegations regarding Defendant Andrews, let alone any factual allegations which show that she is individually liable for any of the wrongdoing alleged in the complaint. The only reference to Andrews in the Complaint is that she "is responsible for supervising [her] agents and subordinates under [her] employ . . . and breached this duty by allowing the assault upon the Plaintiff to occur." See Complaint (Docket Entry No. 1), at 27.

It is well-settled that a defendant cannot be held liable under 42 U.S.C. § 1983 absent a showing that the defendant was personally involved in some manner in the unconstitutional conduct. Hardin v. Straub, 954 F.2d 1193, 1196 (6th Cir. 1992). Defendant Andrew's supervisory position and her right to control employees cannot form the basis for a claim of individual liability against her because the theory of respondeat superior does not support a claim under Section 1983. Phillips v. Roane Cnty., Tenn., 534 F.3d 531, 543 (6th Cir. 2008); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999), cert. denied, 530 U.S. 1264, 120 S.Ct. 2724, 147 L.Ed.2d 988 (2000); Hays v. Jefferson Cnty., 668 F.2d 869, 872 (6th Cir. 1982). The plaintiff's claim against Defendant Andrews has no basis other than respondeat superior. Indeed, the plaintiff concedes in his response that his claim against Defendant Andrews is based upon respondeat superior. See Docket Entry No. 41, at 1. The remainder of the plaintiff's response in opposition fails to provide any persuasive legal basis

8

supporting a claim of constitutional liability against Defendant Andrews, but merely sets forth conclusory and factually unsupported assertions.

The plaintiff has also named Defendant Andrews in her official capacity as the Health Administrator at RMSI. Because the plaintiff in an official capacity action seeks damages not from the individually named defendant but from the entity for which the defendant is an agent, Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir. 1993), "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); Johns v. Bonnyman, 109 Fed. Appx. 19, 2004 WL 1791396 (6th Cir. Aug. 6, 2004). However, the entity for which Defendant Andrews works is not entirely clear. In the Complaint, the plaintiff alleges that she is the RMSI Health Administrator, which suggests that she is employed by TDOC. However, both Defendant Andrews' Answer, see Docket Entry No. 36, at 1, and the Memorandum in Support of her Motion, see Docket Entry No. 37-1, at 2-3, suggest that she is employed by Corizon Healthcare, Inc., f/k/a Correctional Medical Services ("Corizon"), a private entity which has contracted to provide medical services to inmates at the RMSI.

Any official capacity claim against Defendant Andrews as an employee of TDOC warrants dismissal as a matter of law because such a claim is essentially a claim against the State of Tennessee and the Eleventh Amendment bars a plaintiff from suing a state, a state agency, or any of its employees in their official capacities for monetary damages on civil rights claims. Graham, 473 U.S. at 169; Turker v. Ohio Dept. of Rehab. & Corr., 157 F.3d 453, 456 (6th Cir. 1998). Additionally, neither a State nor an official acting in his official capacity is a "person" for the purposes of a suit brought under Section 1983. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 2311-12, 105 L.Ed.2d 45 (1989); Hardin, 954 F.2d at 1198.

9

To the extent that Defendant Andrews is sued in her official capacity as an employee of Corizon, respondeat superior cannot support such a claim. See Street v. Corrections Corp. of Am., 102 F.3d 810, 818 (1996). An official capacity claim must be premised upon a theory that a policy of Corizon caused the deprivation of the plaintiff's constitutional rights. See Starcher v. Correctional Med. Sys., Inc., 7 Fed.Appx. 459, 2001 WL 345810 (6th Cir. March 26, 2001) (applying policy requirement to CMS in prison medical care case). This requires the analysis set out in Monell v. Department of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for determining the liability of municipalities. In Monell, the United States Supreme Court explained, "[i]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. The plaintiff must show that the governmental entity was the "moving force" behind the violation of the constitutional rights at issue. City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), abrogated in part on other grounds, Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting Monell, 436 U.S. at 694).

In the instant action, the Plaintiff's Complaint is devoid of any factual allegations showing that a policy of Corizon was the moving force behind the alleged wrongdoings regarding the removal of his earring, as opposed to being the result of actions of individual actors. As this Court has noted, "[i]n the context of Section 1983 municipal liability, district courts in the Sixth Circuit have interpreted Iqbal's standards strictly." Hutchison v. Metropolitan Gov't of Nashville and Davidson Cnty., 685 F.Supp.2d 747, 751 (M.D. Tenn. Feb. 5, 2010) (Nixon, J.) (collecting cases). Merely positing a theory of legal liability that is unsupported by specific factual allegations does not state a claim for relief which survives a motion to dismiss. See Iqbal, 556 U.S. at 678-79. Accordingly, the

official capacity claims against Defendant Andrews as an employee of Corizon warrant dismissal for failure to state a claim upon which relief can be granted. See Madison v. Corizon Corp., 2012 WL 2412064 (E.D. Mich. June 26, 2012).

With respect to state law claims, the Court finds that the plaintiff's Complaint, even with a liberal construction, fails to allege any cognizable state law claims against Defendant Andrews.


B. Defendants Woodall, Vance, Smith, Hodge, and Bell

The motion to dismiss should be denied as to Defendant Vance on the claim of the forced removal of the plaintiff's earring. The plaintiff's allegations that he was held down, denied a topical anesthetic, and endured unnecessary and "searing" pain during the removal of his earring is sufficient to state a claim that he was subjected to the unnecessary and wanton infliction of pain in violation of the Eighth Amendment. See Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Further, contrary to the arguments made by Defendant Vance that the plaintiff has not alleged facts showing the personal involvement of Defendant Vance, the Complaint contains factual allegations that Defendant Vance was directly and personally involved in the incident in question and was the prison official who gave the order to medical personnel to remove the earring. See Complaint, at 11-12 and 14-16. These allegations are sufficient, at this stage of the action, to support a claim that Defendant Vance was personally involved in the alleged unlawful action . See Greene v. Barber, 310 F.3d 889, 899 (6th Cir. 2002); Shehee, 199 F.3d at 300; Leach v. Shelby Co. Sheriff, 891 F.2d 1241, 1246 (6th Cir. 1989).

As to the plaintiff's other claims, even when given the benefit of a liberal construction, the allegations made in the Complaint fail to state claims upon which relief can be granted against Defendants Woodall, Smith, Hodge, and Bell.

A repeated claim of the plaintiff is that these defendants are personally liable to him because they failed to respond to his grievances or complaints and/or failed to engage in an after-the-fact investigation of the actions of other prison officials. Such allegations simply fail to support a claim of individual liability against these defendants. There can be no liability assessed against a defendant under 42 U.S.C. § 1983 absent a showing that the defendant was personally involved in some manner in the unconstitutional conduct. Hardin, supra. While supervisory officials can be deemed liable under Section 1983 in some situations, the factual situations must show that the supervisory official had actual personal involvement by directly participating, encouraging, authorizing, or acquiescing in the alleged unconstitutional conduct. See Shehee, 199 F.3d at 300; Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). There are no such allegations in the Complaint. If grievances, complaints, or letters received by prison or state officials trigger a duty to investigate and can form the basis for constitutional liability if the responding official does not overturn the underlying wrong complained about, then the named defendants would essentially become liable for the acts committed by other individuals. Such a scenario is nothing less than liability based on respondeat superior, which is not a basis for liability under 42 U.S.C. § 1983. See Monell, 436 U.S. at 691; Rizzo v. Goode, 423 U.S. 362, 371-72, 375-77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); Grinter v. Knight, 532 F.3d 567, 575-76 (6th Cir. 2008); Shehee, 199 F.3d at 300; Henry v. Pogats, 35 F.3d 565, 1994 WL 462129 (6th Cir. Aug. 25, 1994) ("A combination of knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983.").

The plaintiff does not state a constitutional claim based on the allegation that Defendant Woodall lied to the plaintiff's stepfather. Even if true, the plaintiff fails to show how his constitutional rights were violated by the alleged untruthful statements.

The plaintiff's allegations that prison officials failed to follow grievance procedures and failed to follow other internal prison policies do not support constitutional claims. There is no constitutional right to an effective, fair, or properly functioning prison grievance procedure, and a prison inmate does not have a constitutionally protected interest in prison grievance procedures. See Walker v. Michigan Dep't of Corr., 128 Fed. Appx. 441 (6th Cir. Apr. 1, 2005); Miller v. Haines, 156 F.3d 1231, 1998 WL 476247 (6th Cir. Aug. 3, 1998); Spencer v. Moore, 638 F. Supp. 315 (E.D. Mo. 1986); Azeez v. DeRobertis, 568 F. Supp. 8 (N.D. Ill. 1982). Further, allegations that a prison official failed to follow an internal prison policy are not sufficient to support a constitutional claim. See Black v. Parke, 4 F.3d 442, 448 (6th Cir. 1993); Barber v. City of Salem, Ohio, 953 F.2d 232, 240 (6th Cir. 1992).

The plaintiff's allegations that his due process rights were violated in the prison disciplinary proceedings brought against him do not state a constitutional claim upon which relief can be granted. Prison disciplinary procedures do not themselves create an interest protected by the Due Process Clause. Sandin v. Conner, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In order to implicate the protections of due process with respect to prison disciplinary proceedings, the plaintiff must have suffered a punishment that rose to the level of an atypical and significant hardship in relation to the ordinary incidents of prison life. Id. at 484. The five days of punitive segregation, suspended for a 60 day probationary period, that the plaintiff alleges he received as punishment, see Complaint, at 22, does not rise to the level necessary to satisfy this standard. See Harris v. Truesdell,

79 Fed. Appx. 756, 758-59, 2003 WL 22435646, *2 (6th Cir. Oct. 23, 2003) (a punishment of more than 60 days in punitive segregation does not give rise to a protected interest implicating due process protections).

The plaintiff's allegation that he was reclassified and transferred from the RMSI to the WTSP fails to state a constitutional claim upon which relief can be granted. A prison inmates has no constitutional right to be confined in any particular correctional institution, and the mere complaint about a prison transfer does not raise a constitutional concern. See Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005); Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); Ward v. Dyke, 58 F.3d 271 (6th Cir. 1995). To the extent that the plaintiff alleges that his transfer was retaliatory, see Complaint, at 26, his allegation is conclusory and will not support a claim. Furthermore, the Sixth Circuit has routinely found that transfers between prisons do not provide a basis for a retaliation claim. See King v. Zamiara, 150 Fed. Appx. 485, 2005 WL 2496478 (6th Cir. Oct. 7, 2005); Smith v. Yarrow, 78 Fed. Appx. 529, 543, 2003 WL 22400730 (6th Cir. Oct. 20, 2003); Friedmann v. Corrections Corp. of Am., 11 Fed. Appx. 467, 2001 WL 467990 (6th Cir. Apr. 26, 2001).

The Court also finds that no constitutional claim arises from the plaintiff's allegations regarding the removal of three cell phone numbers from his approved inmate call list. As noted supra, the plaintiff has no constitutional claim based on allegations that a prison policy was not followed, Thus, his allegation that the removal of the cell phone numbers did not comply with prison policy does not state a constitutional claim. See Black, supra; Barber, supra. To the extent that the plaintiff attempts to couch his claim in terms of a violation of his Fourth Amendment privacy rights, see

14

Response in Opposition (Docket Entry No. 64), at 5, such a claim is meritless. First, the plaintiff has not set forth any facts showing how the removal of cell phone numbers creates a cognizable invasion of any protected privacy right. Furthermore, it is well-settled that prison inmates have no reasonable expectation of privacy, see Hudson v. Palmer, 468 U.S. 517, 527-28, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and a prison inmate has only a minimal expectation of privacy regarding the telephone access he is granted within a prison. The plaintiff has likewise not shown any legal basis for a claim that due process protection was required upon the removal of cell phone numbers from his approved call list. What numbers were approved is certainly not a protected liberty interest and the removal of numbers from such a list does not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life. Sandin. 515 U.S. at 484.

To the extent that the plaintiff argues that the policy, in existence at the time, which required the removal of the three cell phone numbers from his approved inmate call list should be scrutinized for its constitutionality, the Court disagrees. There are no allegations in the Complaint that implicate any concerns regarding access to the courts or that show any actual infringement upon the plaintiff's ability to engage in communication with those outside the prison. The determination of what numbers should be permitted on an inmate's approved call list is a matter that should be left to the discretion and expertise of those running the RMSI. While the plaintiff may not have liked the fact that he was not permitted to have cell phone numbers on the approved call list, he has shown absolutely no plausible basis for a claim that this was an unreasonable restriction. See Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994).

Furthermore, in his response in opposition, the plaintiff states that TDOC policy has changed since the filing of his complaint and that cell phone numbers are currently allowed on inmate call lists.

See Docket Entry No. 64, at 5. As such, any request by the plaintiff for declaratory relief regarding the constitutionality of the prior policy is moot because there is no longer any actual and continuing controversy between the parties that would cause an immediate and real threat of injury to him. See City of Los Angeles v. Lyons, 461 U.S. 95, 102-09, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985). There is simply no actual controversy between the parties that calls for a declaration of the rights and other legal relations of the parties. See 28 U.S.C. § 2201; Grand Trunk W. R.R. Co. v. Consolidated Rail Corp., 746 F.2d 323, 326 (6th Cir. 1984).

With respect to state law claims, the Court finds that the plaintiff's Complaint, even with a liberal construction, fails to allege any cognizable state law claims against Defendants Woodall, Smith, Hodge, and Bell.

C. Defendants Mike Crutcher and Correctional Medical Services

28 U.S.C. § 1915(e)(2)(B) provides that:

Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that -
. . .
(B) the action or appeal -
(I) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted; or
(iii) seeks monetary relief against a defendant who is immune from such relief.

The claims brought against Defendants Crutcher and Correctional Medical Services are based on allegations that Crutcher failed to engage in after-the-fact investigations and that Correctional Medical Services failed to supervise subordinates, respectively. See Complaint, at 27-28. As set out

supra, such allegations fail to state claims for relief under Section 1983. Accordingly, these two defendants should be dismissed from the action.[4]

## RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that:

1. the Motion to Dismiss (Docket Entry No. 37) of Defendant Desiree Andrews be GRANTED and Defendant Andrews be DISMISSED from the action;

2. the Motion to Dismiss (Docket Entry No. 61) of Defendants Jason Woodall, Billy Smith, Reuben Hodge, Ricky Bell, and Tomas Vance be GRANTED as to Defendants Woodall, Smith, Hodge, and Bell and these Defendants be DISMISSED from the action. The Motion to Dismiss (Docket Entry No. 61) be DENIED as to Defendant Thomas Vance on the plaintiff's Eighth Amendment claim against Defendant Thomas Vance; and

3) the claims brought against Defendants Mike Crutcher and Correctional Medical Services be DISMISSED, pursuant to 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim upon which relief can be granted and these Defendants be DISMISSED from the action.[5]

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which

---

[4] This Report and Recommendation and the fourteen day period for objections to be filed by the plaintiff, satisfies the procedural requirements for a sua sponte grant of dismissal under Rule 12(b)(6) for failure to state a claim. See Morrison v. Tomano, 755 F.2d 515, 516-17 (6th Cir. 1984). See also Yashon v. Gregory, 737 F.2d 547, 552 (6th Cir. 1984).

[5] If this Report and Recommendation is adopted, the defendants remaining in the action will be Thomas Vance, "Captain" Davis, Nurse Kim, and Steve Cernawsky.

objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

>Respectfully submitted,

>*[signature: Juliet Griffin]*
>JULIET GRIFFIN
>United States Magistrate Judge